UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00205-JAW |
| | ) | |
| JOWENKY NUÑEZ | ) | |

**ORDER ON THE DEFENDANT'S MOTION FOR CHANGE OF VENUE**

The Court denies a defendant's motion to change venue of a proceeding in a petition to revoke his supervised release from the District of Maine to the Southern District of New York.

## I. PROCEDURAL HISTORY

On January 12, 2012, a federal grand jury indicted Jowenky Nuñez along with eight other co-conspirators for engaging in a conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base and indicted Mr. Nuñez for his possession of a firearm in furtherance of a drug-trafficking offense. *Superseding Indictment* (ECF No. 81). The superseding indictment alleged that Mr. Nuñez committed the drug-trafficking crime in the District of Maine and elsewhere and that he committed the firearms offense in the District of Maine. *Id.* at 1-3. On January 18, 2013, Mr. Nuñez pleaded guilty to the drug-trafficking count only. *Min. Entry* (ECF No. 366). The Government's Version of the Offense that Mr. Nuñez admitted was true on January 18, 2013, stated that he joined a conspiracy that was distributing cocaine and crack cocaine in the Bangor, Maine area and that he committed the drug-

trafficking crime while in Bangor. *Gov't's Version of the Offense* at 1-2 (ECF No. 361). On December 1, 2014, the Court imposed a sentence of ninety-seven months of incarceration, five years of supervised release, no fine, and a $100 special assessment. *J.* (ECF No. 806). On December 6, 2014, Mr. Nuñez appealed to the Court of Appeals for the First Circuit, *Notice of Appeal* (ECF No. 814), and on October 19, 2016, the First Circuit affirmed the sentence. *United States v. Nuñez*, 840 F.3d 1 (1st Cir. 2016).

On June 24, 2019, the Government filed a petition to revoke Mr. Nuñez's supervised release. *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 945). The Government alleged that Mr. Nuñez commenced supervised release on March 22, 2019, and had been residing in the Bronx Community Residential Reentry Center in New York City under a special condition added on March 29, 2019. *Id.* at 1. The Government alleged that Mr. Nuñez violated two conditions of his supervised release. *Id.* at 1-2. The first alleged violation is that he was unsuccessfully discharged from Bronx Community Residential Reentry Center for violating facility rules and the second is that he violated the "no drugs" condition of supervised release. *Id.*

## II. THE PARTIES' POSITIONS

### A. Jowenky Nuñez's Motion to Change Venue

On August 6, 2019, Mr. Nuñez filed a motion seeking to transfer venue for the hearing on his alleged violation of special condition three of his supervised release to the United States District Court for the Southern District of New York. *Def.*

*Jowensky Nunez' Mot. to Change Venue Pursuant to Fed. R. Crim. P. 21(b)* at 1 (ECF No. 961) (*Def.'s Mot.*). Mr. Nuñez says "[t]he allegation in this case is that defendant possessed an unknown liquid, presumed to be alcohol though no test has been conducted, and that an altercation occurred at the halfway house where he was residing in New York City when staff took the subject liquid from defendant." *Id.* Mr. Nuñez claims that the United States Probation Office has recommended a prison term of nine months even though the liquid in question has not been tested nor has he tested positive for any substance. *Id.* at 2. Mr. Nuñez maintains his innocence. *Id.*

Mr. Nuñez cites ten factors courts consider when deciding whether to transfer venue as set forth in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964). *Def.'s Mot.* at 3. Mr. Nuñez argues these factors demonstrate that the interests of convenience and justice favor changing venue to the Southern District of New York. *Id.* at 3-4. Mr. Nuñez avers:

> 1) the defendant resides in New York City;
> 2) all potential witnesses reside or work in New York City;
> 3) the contested event took place in New York City;
> 4) all relevant documents in this matter were generated in New York City;
> 5) counsel on the Rule 5 stage of proceeding worked in New York City and the Federal Defender's Office in New York City has agreed to represent defendant;
> 6) the indigent defendant will incur considerable expense to travel to Bangor, Maine to try this matter;
> 7) the trial location is remote for both the New York City defendant and the New Hampshire based AUSA;
> 8) the case has already been docketed in the Southern District of New York;
> 9) defendant's ability to continue to comply with conditions of release will be compromised by travel to Bangor, Maine; and

3

10) not one of the foregoing factors weighs in favor of denying transfer. *Id.* at 4.

### B. The Government's Opposition

On August 9, 2019, the Government filed its opposition to the motion for change of venue. *Obj. to Def.'s Mot. to Change Venue Pursuant to Fed. R. Crim. P. 21(b), Ct. Docket Doc. # 961* (ECF No. 962) (*Gov't's Opp'n*). In its response, the Government says that Mr. Nuñez's motion "conflates two legal principles, Fed. R. Crim. P. 21, Transfer for Trial, and 18 U.S.C. § 3605, Transfer of jurisdiction over a probationer [or supervised releasee] and seeks to have the Court apply the wrong principle." *Id.* at 2.

### C. Jowenky Nuñez's Reply

Mr. Nuñez's reply was due on August 23, 2019, but he did not file a reply.

## III. DISCUSSION

Federal Rule of Criminal Procedure 21(b) provides, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." FED. R. CRIM. P. 21(b). Courts possess broad discretionary power in determining whether to transfer a criminal prosecution to another district. *United States v. Quiles-Olivo*, 684 F.3d 177, 181-82 (1st Cir. 2012). In deciding whether to grant a motion to transfer venue, Mr. Nuñez correctly points out that a court considers a nonexclusive set of factors. *See Platt*, 376 U.S. at 243-44. However, Rule 21 applies to the transfer of venue with respect to trial.

Mr. Nuñez is not really seeking a transfer of his case for trial but a transfer of jurisdiction of his supervised release from the District of Maine to the Southern District of New York, so that the Court in New York can assume jurisdiction over his supervised release. Individuals on supervised release who seek a transfer of jurisdiction must comply with section 3605 of title 18 of the United States Code. Section 3605 states:

> A court, after imposing a sentence, may transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his probation or release, or is permitted to proceed, with the concurrence of such court. A later transfer of jurisdiction may be made in the same manner. A court to which jurisdiction is transferred under this section is authorized to exercise all powers over the probationer or releasee that are permitted by this subchapter or subchapter B or D of chapter 227.

18 U.S.C. § 3605. The statute contemplates that the court that imposed sentence retains jurisdiction over the supervised releasee and sets out a procedure for the transfer of jurisdiction from the sentencing court to another jurisdiction. Although the Court is not aware of any First Circuit authority directly on point, the language, "with the concurrence of such court," has been viewed as requiring "the transferee court's acceptance of or consent to the transfer."[1] *United States v. Stile*, No. 1:11-cr-00185-JAW, 2019 U.S. Dist. LEXIS 29158, at *3 (D. Me. Feb. 25, 2019) (citing *United States v. Votta*, 212 F. App'x 142, 143 (3d Cir. 2007); *United States v. Fernandez*, 379

---

[1] The Second Circuit has a slight variation. In *United States v. Murdock*, the Second Circuit concluded that the transfer of jurisdiction could take place in a transferee jurisdiction if the sentencing court requires it as a condition of supervised release. 735 F.3d 106, 112-13 (2d Cir. 2013). As this Court has not made a transfer to the Southern District of New York a condition of Mr. Nuñez's supervised release, the Court need not address whether *Murdock* could apply.

5

F.3d 270, 272 (5th Cir. 2004); *United States v. Ohler*, 22 F.3d 857, 858-59 (9th Cir. 1994)).

Here, Mr. Nuñez was released from incarceration on March 22, 2019, with no intention of residing within the District of Maine. He asked to live in New York City, where he was born, grew up, was schooled, where his girlfriend (current or ex), son, and mother live, and where he considers home. *Revocation Report* at 6; *Revised Presentence Investigation Report* ¶¶ 39-53. Mr. Nuñez came to Maine in December 2010 and remained in Maine intermittently until November 2011 to sell drugs. *Revised Presentence Investigation Report* ¶¶ 3-13. In accordance with standard procedure, the United States Probation Office in the District of Maine agreed to allow him to be supervised in New York City and contacted the United States Probation Office in the Southern District of New York to determine whether it would accept a transfer. *Revocation Report* at 6. However, the United States Probation Office for the Southern District of New York refused to accept a transfer of supervision of Mr. Nuñez. *Id.*

As Mr. Nuñez's family and connections were in New York City, after some further consultation with the United States Probation Office for the District of Maine, the United States Probation Office for the Southern District of New York agreed to allow Mr. Nuñez to reside temporarily in its District with a long-term goal of ultimately transferring jurisdiction to the Southern District. *Id.* However, the Probation Office for the Southern District conditioned his presence in New York City on the condition that he be placed in a residential recovery center for three months.

*Id.* On March 28, 2019, Mr. Nuñez agreed to a modification of his conditions of supervised release to add a three-month term in a residential recovery center. *Req. for Modifying the Conditions or Term of Supervision with the Consent of the Offender* (ECF No. 943), Attach. 1, *Waiver of Hr'g to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision*.

The agreement of the Probation Office of the Southern District of New York to allow Mr. Nuñez to temporarily reside there over its supervision did not constitute a formal transfer of jurisdiction from Maine to New York under 18 U.S.C. § 3605. In fact, the United States Probation Office for the Southern District of New York never accepted a formal transfer of Mr. Nuñez's supervised release case to its district. Thus, jurisdiction over Mr. Nuñez remains with this Court until a formal transfer takes place and it would be not only questionable jurisdictionally but also dubious practically for a court with jurisdiction to transfer a case for hearing to a court without jurisdiction.

In these circumstances, the Court will not transfer the hearing on the Probation Office's petition to revoke Mr. Nuñez's supervised release to a district that has not assumed jurisdiction over his case and, in fact, at least to date has refused to accept such a transfer. The Court need not reach whether in an unusual case it could order a transfer to another district of a supervised release petition solely for the purpose of holding a hearing under Rule 21(b) in the absence of a transfer of jurisdiction under 18 U.S.C. § 3605. Whatever unique circumstances might justify

such an order either under Rule 21 or, if not applicable, under the inherent authority of the court are not present here.

IV.     **CONCLUSION**

The Court DENIES Defendant Jowenky Nuñez's Motion to Change Venue Pursuant to Federal Rule of Criminal Procedure 21(b) (ECF No. 961).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODOCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of October, 2019