UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11-cr-00205-JAW-06 |
| | ) | |
| JOWENKY NUÑEZ | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a nine-month sentence for violating the terms of his supervised release whose prison term ends next month moves for immediate compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) claiming his health and need to care for his mother merit relief. The Court dismisses the motion without prejudice because the inmate has not shown extraordinary and compelling reasons justifying his immediate release. The Court further concludes that the § 3553(a) factors support his continued detention for the short time left on his sentence.

I.    **BACKGROUND**

A.    **Crime and Punishment**

On December 1, 2014 the Court sentenced Jowenky Nuñez to ninety-seven months imprisonment, a five-year term of supervised release, and a $100.00 special assessment. *Min. Entry* (ECF No. 805). Mr. Nuñez pleaded guilty to engaging in a conspiracy to possess with the intent to distribute twenty-eight grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. *J.* at 1 (ECF No. 806).

The Court relied upon a Revised Presentence Investigation Report (PSR) when it sentenced Mr. Nuñez and adopted the PSR with several revisions. *See Restricted U.S. Probation Filing* (ECF No. 1053), Attach. 3, *PSR*; *Statement of Reasons* at 1 (ECF

No. 807). As the PSR details, Mr. Nuñez was involved in a conspiracy led by Dawlin Carbrera to distribute cocaine base in Maine. *PSR* ¶¶ 3-13. Although Mr. Nuñez was in New York City during a portion of the conspiracy, he spent much of 2010 and 2011 in Bangor, Maine managing Mr. Cabrera's operation. *Id.* ¶ 10. Mr. Nuñez's codefendants identified him as overseeing the operation when Mr. Cabrera was in New York. *Id.* Some of Mr. Nuñez's codefendants also told authorities that he operated as a cocaine distributor during the conspiracy. *Id.* In addition to crack cocaine distribution, Mr. Nuñez and his coconspirators carried firearms at the direction of Mr. Cabrera. *Id.* ¶ 12. At sentencing, the Court concluded Mr. Nuñez was criminally responsible for 1.9 kilograms of cocaine base and enhanced Mr. Nuñez's sentencing guideline based his carrying a firearm. *Statement of Reasons*, Attach. 1, *Findings Affecting Sentencing* ¶¶ 2, 3 (*Sentencing Findings*).

This federal conviction was not Mr. Nuñez's first encounter with the criminal justice system. He had three prior convictions in New York. *PSR* ¶¶ 29-31. First, he served six months in prison for criminal contempt in the second degree after, in violation of a court order of protection, he punched a woman with whom he had been romantically involved. *Id.* ¶ 29. Next, he served four months in prison for a witness intimidation conviction. *Id.* ¶ 30. That offense occurred when, on a separate occasion from the criminal contempt charge, Mr. Nuñez threatened the same woman to discourage her from testifying or cooperating with the authorities. *Id.* Finally, he received a sentence of time served plus a six-month license suspension for illicitly possessing two Percocet pills. *Id.* ¶ 31. At the time of his sentencing hearing on

December 2, 2014, Mr. Nuñez was a criminal history category III.  *Sentencing Findings* ¶ 7.  Mr. Nuñez's guideline sentence range was 188 to 235 months.  *Id.* ¶ 8.

### B.     Jowenky Nuñez Violates His Supervised Release

On March 29, 2019, the United States Office of Probation and Pretrial Services (PO) notified the Court that Mr. Nuñez had been released from Bureau of Prisons (BOP) custody on March 22, 2019.  *Req. for Modifying the Conditions or Term of Supervision with the Consent of the Offender* at 1 (ECF No. 943).  The PO requested that the Court amend the conditions of Mr. Nuñez's supervised release so that he could reside in a residential reentry center (RRC) in New York City.  *Id.* at 1.  On the same day, the Court granted the PO's request.  *Order* (ECF No. 944).

On June 24, 2019, the PO requested a warrant for Mr. Nuñez's arrest, alleging he had violated two conditions of his supervised release.  *Pet. for Warrant or Summons for Offender under Supervision* at 1-2 (ECF No. 945).  The PO alleged Mr. Nuñez had been unsuccessfully discharged from an RRC in The Bronx, New York because of a June 14, 2019 incident where he was suspected of alcohol possession and was involved in an ensuing altercation where he attempted to force himself into an RRC staff office.  *Id.* at 1-2.  The PO further recommended that the Court revoke Mr. Nuñez's supervised release.  *Id.* at 2.  That same day, the Court granted the PO's request for an arrest warrant.  *Order* (ECF No. 946).  Mr. Nuñez denied the allegations and the petition for revocation was scheduled for a hearing.

The revocation hearing took place over two days, February 5, 2020 and February 27, 2020.  *Min. Entry* (ECF No. 995); *Min. Entry* (ECF No. 1000).  On

February 27, 2020, at the conclusion of the revocation hearing, the Court found Mr. Nuñez violated a special condition of his supervised release that the Court had added on March 29, 2019, which required Mr. Nuñez to live in an RRC for three months. *Tr. of Proceedings*, *Continued Final Revocation Hr'g* 56:25-60:15 (ECF No. 1011) *(Tr. 2/27 Hr'g)*. The Court also concluded Mr. Nuñez violated special condition three, which prohibited him from possessing any controlled substance, reasoning that Mr. Nuñez violated this condition by possessing alcohol at the RRC. *Id.* The Court revoked Mr. Nuñez's supervised release and sentenced him to nine months imprisonment, released him temporarily on bail, and ordered him to report to BOP custody by 2:00 p.m. on Wednesday, April 29, 2020.[1]  *Id.* 76:18-22, 80:25-81:2; *Revocation J.* at 2 (ECF No. 1001). On March 31, 2020, the Court extended Mr. Nuñez's report date to June 24, 2020 at 2:00 p.m. following a motion by Mr. Nuñez and a response by the Government. *Order* (ECF No. 1009).

On May 5, 2020, the Government moved to revoke Mr. Nuñez's bail and requested an arrest warrant. *Ex Parte Mot. for Arrest Warrant and to Revoke the Def.'s Bail/Order of Release* at 1-2 (ECF No. 1012). The Government attached a letter from Mr. Nuñez's probation officer indicating that he had been charged with attempted murder after an April 18, 2020 shooting in New York City.[2]  *Id.*, Attach. 1.,

---

[1]    Mr. Nuñez appealed his sentence. On December 22, 2020, the First Circuit affirmed the Court's "conclusion that the government had proven the violations of supervised release by a preponderance of the evidence" and further held Mr. Nuñez had "not shown [his nine-month sentence] was substantively unreasonable." *J.* (ECF No. 1043). On January 13, 2021, the Clerk docketed the First Circuit Mandate. *Mandate* (ECF No. 1052).

[2]    The Court does not conclude or infer this arrest supports a finding that Mr. Nuñez attempted to murder someone. Under *United States v. Marrero-Pérez*, 914 F.3d 20 (1st Cir. 2019), "no weight should be given in sentencing to arrests not buttressed by convictions or independent proof of conduct . . .." *Id.* at 22. Thus, a sentencing judge errs by "rel[ying] on an arrest report, without some

*USPO Internal Mem.* at 1.  On May 6, 2020, the Magistrate Judge granted the Government's motion for an arrest warrant.  *Arrest Warrant* (ECF No. 1014).  On May 18, 2020, the Government informed the Court that New York authorities had arrested Mr. Nuñez for the attempted murder charge on or about May 14, 2020 and that he was being held on $100,000.00 cash bail in New York City.  *Notice of Def.'s State Custody Status* at 1 (ECF No. 1015).

On June 11, 2020, Mr. Nuñez again moved to delay his surrender date, this time requesting a surrender date of September 1, 2020 in light of the dangers posed by the COVID-19 pandemic.  *Mot. to Defer Surrender Date* (ECF No. 1018).  On June 12, 2020, the Government responded and informed the Court that although the United States Marshals Service had lodged a detainer with state authorities in New York, state authorities had nevertheless released Mr. Nuñez from custody and his whereabouts were unknown.  *Obj. to Mot. to Defer Surrender Date* at 2-3 (ECF No. 1019).  That same day, the Court denied Mr. Nuñez's motion to further defer his self-surrender date based on the factual representations in the Government's response.[3] *Order* (ECF No. 1020).  Mr. Nuñez self-reported to FCI Allenwood Low on

---

greater indicia of reliability that the conduct underlying the arrest took place." *Id.* at 24.  The First Circuit has "implore[d] the bench and bar in this circuit to be ever mindful of those words."  *United States v. Dávila-Bonilla*, 968 F.3d 1, 9 (1st Cir. 2020).  While the First Circuit has not yet extended *Marrero-Pérez* to the compassionate release context, the Court assumes, without deciding, that the same considerations apply.  The record contains no "greater indicia of reliability" on which the Court could find by a preponderance that Mr. Nuñez committed attempted murder.  The Court merely notes this arrest and now-dismissed charge as a component of Mr. Nuñez's criminal history, which is permissible under the First Circuit's decision in *United States v. Ramírez-Romero*, 982 F.3d 35, 37 (1st Cir. 2020).  "[A] sentencing court does not abuse its discretion merely by reciting a defendant's arrest record." *United States v. Díaz-Lugo*, 963 F.3d 145, 153-54 (1st Cir. 2020).

[3]      The Court dismissed Mr. Nuñez's subsequent motion for reconsideration of the Court's denial as moot, after the Government reported that Mr. Nuñez had entered BOP custody in a timely manner on June 24, 2020 and begun his incarceration sentence.  *Order* (ECF No. 1025); *Suppl. Resp. in Opp'n to Mot. to Reconsider Mot. to Defer Surrender Date, Docket #1022* (ECF No. 1024).

June 24, 2020 in accordance with the Court's earlier order.  *Suppl. Resp. in Opp'n to Mot. to Recons. Mot. to Defer Surrender Date, Docket #1022* at 1 (ECF No. 1).  Mr. Nuñez is now nearing the end of his nine-month sentence for violating his supervised release.  The BOP sentencing computation data confirm that the earliest date Mr. Nuñez will be eligible for home detention is February 23, 2021[4] and his projected date for release is March 21, 2021.  *Gov't Obj. to Def.'s Mot. for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)*, Attach. 4, *BOP Sentence Monitoring, Computation Data* at 1 (ECF No. 1057).

### C.    Jowenky Nuñez Moves for Compassionate Release

On December 31, 2020, Mr. Nuñez moved for compassionate release.[5]  *Jowenky Nuñez's Mot. for Compassionate Release and Mot. for Modification of Sentence*

---

[4]    Here the Court is reciting what the BOP sentencing computation data reveal, not whether it is likely that Mr. Nuñez will be released early into home confinement.  The Court is aware that Mr. Nuñez filed a request for release to home confinement in August, which the BOP denied, and there is no evidence in the record that the BOP is currently considering him for early release.  The Court is assuming that Mr. Nuñez will be released when his full nine-month term of incarceration expires on March 21, 2021.

[5]    On July 21, 2020, the Court received a motion from Mr. Nuñez's former CJA-appointed counsel indicating that Mr. Nuñez and his brother had informed counsel that they hoped the Court would appoint counsel to file a motion for compassionate release on Mr. Nuñez's behalf.  *Jowenky Nunez Mot. to Appoint Att'y on Trial Level to File Mot. for Compassionate Release Pursuant to the Criminal Justice Act* (ECF No. 1027).  The next day, the Court denied the motion to appoint counsel, stating that it needed to be convinced the petition was potentially meritorious.  *Order* (ECF No. 1028).  The Court's hesitation to appoint counsel stemmed from the fact that Mr. Nuñez was in his thirties, had none of the medical risk factors that could make him more vulnerable to COVID-19 at the time of his sentencing, had only been incarcerated for about a month, and presented no evidence suggesting he had exhausted his administrative remedies as required by the applicable statute.  *Id.*  Mr. Nuñez never responded to the Court's July 22, 2020 order.

On January 13, 2021, the Court appointed counsel.  *Order* (ECF No. 1050).  On December 31, 2020, the Court received a renewed motion from Mr. Nuñez to appoint counsel, along with the motion docketed as "Second Motion for Compassionate Release."  *Jowenky Nunez (renewed) Mot. to Appoint Att'y on Trial Level to File Mot. for Compassionate Release Pursuant to the Criminal Justice Act* (ECF No. 1046); *Jowenky Nunez's Mot. for Compassionate Release and Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 1047).  However, the pending motion is Mr. Nuñez's first motion for compassionate release because, as discussed, the Court never received a prior motion from Mr. Nuñez after denying his motion to appoint counsel.

Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1047) (*Def.'s Mot.*). On January 18, 2021, Mr. Nuñez filed a status report with the Court and attached two cases in support of his motion. *Letter from Att'y William S. Maddox to Hon. John A. Woodcock, Jr.* (ECF No. 1056) (*Status Report*); *id.*, Attachs. 1-2. On January 21, 2021, the Government responded in opposition to Mr. Nuñez's motion. *Gov't's Obj. to Def.'s Mot. for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 1057) (*Gov't's Opp'n*). On January 22, 2021 the Clerk of Court docketed a pro se letter and several attachments from Mr. Nuñez. *Letter from Jowenky Nunez to Hon. John A. Woodcock, Jr.* (ECF No. 1058) (*Pro Se Letter*); *id.*, Attachs. 1-4.

On February 1, 2021, the Government supplemented its filings and informed the Court that New York had dismissed the attempted murder charge against Mr. Nunez. *Gov't's Suppl. to Its Obj. to Def.'s Mot. for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) at 1-2* (ECF No. 1064) (*Gov't's Suppl.*). Apparently, the alleged victim and several witnesses had initially identified Mr. Nuñez as the shooter but later stopped cooperating with law enforcement. *Id.* at 1-2. That same day, Mr. Nuñez filed his reply. *Jowenky Nunez's Reply to Gov't's Obj. to Def.'s Mot. for Compassionate Release and Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 1065) (*Def.'s Reply*). Mr. Nuñez supplemented his reply the following day. *Suppl. to Jowenky Nunez's Reply to Gov't's Obj. to Def.'s Mot. for Compassionate Release and Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 1069) (*Def.'s Suppl. Reply*). On February 5, 2021 the Government moved unopposed for leave to file a surreply. *Gov't's Assented-to Mot. to*

7

*File a Surreply to Def.'s Reply to the Gov't's Obj. to His Mot. for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 1070).  The Court granted the motion. *Order* (ECF No. 1071).  On February 8, 2021 the Government filed its surreply. *Gov't's Surreply to Def.'s Reply to the Gov't's Obj. to His Mot. for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 1072) (*Gov't's Surreply*).

On February 10, 2021, Mr. Nuñez filed a motion to seal a medical record and on February 12, 2021, he filed the medical record.  *Mot. to Seal Mother's Med. R.* (ECF No. 1073); *Mother's Med. R.* (ECF No. 1074).  The Court granted the motion to seal on a temporary basis and ordered the parties to brief whether the sealing order should be maintained.  The Court has affixed to this opinion under seal its evaluation of the mother's medical record as it pertains to Mr. Nuñez's motion for compassionate release.  The appendix may or may not remain under seal depending upon the Court's resolution of the sealing issue now being briefed.

## II.   THE PARTIES' POSITIONS

### A.   Jowenky Nuñez's Motion

Mr. Nuñez first contends that his motion for compassionate release is timely and therefore requests that the Court consider its merits.  *Def.'s Mot.* at 4-5.  He attaches a denial form that he received from the BOP on August 14, 2020 in support of his position.  *Id.*, Attach. 1, *Inmate Req. to Staff Resp.* (*First BOP Denial*).

Shifting to the merits, Mr. Nuñez states that he "does not have his medical records from Allenwood Low FCI, where he is incarcerated" but that "they will substantiate a vulnerability to the coronavirus." *Def.'s Mot.* at 5.  He contends his

8

undisclosed medical conditions present an extraordinary and compelling reason justifying release. *Id.* at 6. Next, he briefly touches on the danger he presents to the community, stating that his "offense record is well documented." *Id.* He states that, if released, he "would reside with his mother . . . under circumstances agreeable to the department of probation" and "submit himself to any additional restrictions and conditions of supervised release . . .." *Id.*

Mr. Nuñez's January 18, 2021 status report attached two cases: *United States v. Cremer*, 12 Crim. 473 (ER), 2021 U.S. Dist. LEXIS 3916 (S.D.N.Y. Jan. 8, 2021) and *United States v. Michael Leslie Cohen*, No. 1:17-cr-544-NGG, (E.D.N.Y. Apr. 17, 2020). *Status Report* at 1, Attachs. 1-2. He notes that judge in *Cremer* discussed the spread of COVID-19 in FCI Allenwood Low in mid-December 2020, and in *Cohen*, a judge in the Eastern District of New York granted compassionate release to a man whose parents lived in Maine and who had only one week remaining on his three-month sentence. *Id.*

## B.   The Government's Opposition and Supplemental Opposition

The Government requests that the Court "deny [Mr. Nuñez's] motion because (i) [he] has not exhausted his administrative remedies with the Bureau of Prisons; (ii) [he] has not stated an 'extraordinary and compelling' reason for release; (iii) [he] is a danger to the community; and (iv) the § 3553(a) factors disfavor a sentence reduction." *Gov't's Opp'n* at 1. After recounting the procedural posture of the case and Mr. Nunez's arguments for release, the Government provides an overview of the BOP's response to the COVID-19 pandemic. *Id.* at 4-6.

Turning to exhaustion, the Government argues "[t]he Court should deny [Mr. Nuñez's] motion because he has failed to exhaust his administrative remedies." *Id.* at 8.  The Government urges that although Mr. Nuñez's motion "requests compassionate release due to his high risk factors related to his age of 38 years old, medical conditions and the risk posed to him by the COVID-19 pandemic . . . this is the first time [Mr. Nuñez] has requested compassionate release on this basis." *Id.* at 9 (internal quotation marks omitted).  According to the Government, Mr. Nuñez's prior internal requests for release to the BOP did not rely on medical conditions as grounds for release, but rather so he could care for his ailing mother and young son. *Id.*  However, the Government observes Mr. Nuñez's current motion does not raise those grounds for release.  *Id.*  Thus, the Government concludes Mr. Nuñez did not comply with the exhaustion requirement.  *Id.* at 10.

Regardless of exhaustion, the Government contends Mr. Nuñez "has not identified 'extraordinary and compelling' reasons that warrant a sentencing reduction." *Id.*  The Government refutes his reliance on caselaw, observing that the case Mr. Nuñez cited about the prevalence of COVID-19 at FCI Allenwood denied compassionate release and that, in any event, conditions at FCI Allenwood have improved.  *Id.* at 10-11.  The Government distinguishes the other case Mr. Nuñez cited, stating that although the Court granted release, the BOP had previously recommended that inmate's release to home confinement "but the release plan fell through due to probation's unavailability" and the Government did not object to compassionate release.  *Id.* at 12.

The Government also notes that Mr. Nuñez never supplemented his initial motion to identify a medical condition that put him at risk, despite receiving his medical records from the BOP. *Id.* For its part, the Government relies on a letter from Dr. J. Gavin Muir, Chief Medical Officer of Amoskeag Health in Manchester, New Hampshire for the proposition that Mr. Nuñez has no medical conditions that increase his risk of serious complications from COVID-19. *Id.* In the letter, Dr. Muir notes that he reviewed Mr. Nuñez's medical records and concluded "Mr. Nunez is a 37-year-old male who is essentially healthy." *Id.*, Attach. 5, *Letter from Dr. J. Gavin Muir.* He further notes that although the medical records show several conditions, "these are minor conditions." *Id.* Dr. Muir did not examine Mr. Nuñez. *Id.* "It is [Dr. Muir's] professional opinion that based on the records [he] reviewed [Mr. Nunez] does not have any condition that puts him at a higher risk to develop severe illness if he were contract COVID-19." *Id.* Finally, in a footnote, the Government argues that even if Mr. Nuñez's argument that his caregiver status for his mother and child is properly before the Court, it does not present an extraordinary or compelling reason under *United States v. Whalen*, No. 1:11-cr-00033-JAW, 2020 U.S. Dist. LEXIS 118896, at *19-20 (D. Me. July 7, 2020). *Gov't's Opp'n* at 13 n.7.

Next, the Government contends that Mr. Nuñez's "record shows that he is a danger to the community and should not be released." *Id.* at 13. The Government agrees with Mr. Nuñez that his "offense record is well documented." *Id.* It recounts his criminal history, including his original federal offense, violations of supervised release, and the pending New York attempted murder charge. *Id.* at 14.

11

Finally, the Government asserts "[r]elease is not warranted under the § 3553(a) factors." *Id.* at 15. This argument is based on Mr. Nuñez's criminal history and repeated violations of supervised release. *Id.* The Government concludes that "[t]hough [Mr. Nuñez] has only about two months left to serve, requiring [him] to serve his full sentence is necessary to promote respect for the law, afford adequate deterrence, and protect the public from further crimes of the defendant." *Id.* As previously mentioned, the Government's supplemental response clarifies New York dismissed the pending attempted murder charge against Mr. Nuñez after witnesses stopped cooperating with the investigation. *Gov't's Suppl.* at 1-2.

## C.   Jowenky Nuñez's Reply and Supplemental Reply

Mr. Nuñez's reply first contests the Government's view that he failed to exhaust administrative remedies. *Def.'s Reply* at 1. He notes that although his prior requests to the BOP for release did not mention his medical conditions, the acting warden of his complex mentioned Mr. Nuñez's medical conditions in a denial dated September 21, 2020 "presumably because the prison considered Mr. Nuñez['s] request as being based on his medical profile as well as his request as caregiver for his ailing mother." *Id.* at 1-2.

Mr. Nuñez then cites *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), for the premise that caregiver status is an extraordinary and compelling reason to release an inmate. *Id.* at 1-2. He "maintains . . . he is the only available caregiver for his ailing mother" and states his brother, "Mally, is in the process of collecting

letters and/or statements from all members of [his] family in order to establish this proposition." *Id.* at 3.  He promises to "furnish Mally's material to the Court." *Id.*

Regarding his own health problems, Mr. Nuñez contends that he has chronic back issues resulting from being "ejected from the rear window of an automobile during a car accident . . . ." *Id.*  He references paragraph 44 of the PSR for the proposition that he suffered fractured ribs and a fractured spine in that accident.  *Id.* at 4.  He notes that he had been previously scheduled to have a back cyst removed in October 2020 and that BOP records indicate that pursuing outpatient surgery increased his risk of COVID-19 exposure.  *Id.* at 4-5.  He further states that his current sleeping quarters in prison are the prison's gymnasium, which "exacerbate[s] his back pain." *Id.* at 5.

As for the New York attempted murder charge, Mr. Nuñez posits that the now dismissed charge likely had adverse consequences for him.  *Id.* at 5-6.  He suggests "the government had utilized this charge to object to [his] second request for deferring his self-reporting," claims "the government utilized this charge to support an allegation that [he] was a danger to the community," asserts the BOP may have relied on this pending charge as grounds for denying his request to home confinement, and suggests it "most likely impacted the terms and conditions of his confinement at FCI Allenwood Low." *Id.* at 5-6.  He also objects to Dr. Muir's letter as (1) an improper legal opinion, (2) because the opinion goes to the ultimate question, and (3) because he has not had the opportunity to cross-examine or confront Dr. Muir.  *Id.* at 7.

Mr. Nuñez's supplemental reply references an attached email from his brother, Alfarabick Mally for the proposition that Mr. Nuñez is the only person who can care for their mother. *Def.'s Suppl. Reply* at 1; *id.*, Attach. 1, *Email from Alfarabick Mally* (*Mally Email*). Discussing the email's contents, Mr. Nuñez notes his mother recently had a fall and has had a prior stroke. *Def.'s Suppl. Reply* at 2. According to Mr. Mally, Mr. Nuñez cooks for his mother and assists her with using the restroom. *Mally Email.* Mr. Nuñez concludes his release is proper for these reasons, and the fact that he "no longer poses a danger to society . . .." *Id.* at 2.

### D.   The Government's Surreply

The Government's surreply raises three points. First, that Mr. Nuñez's risk of contracting COVID-19 while obtaining surgery on his back is not an extraordinary and compelling condition because the "general risk of contracting COVID-19 is not an extraordinary and compelling reason for relief." *Gov't's Surreply* at 1. Second, that Mr. Nuñez's "mother's medical condition is not an 'extraordinary and compelling' reason for relief under the compassionate release statute." *Id.* at 2. On this point, the Government observes Mr. Nuñez "has four siblings who could provide her support" and asserts that Mr. Nuñez "being unemployed does not make him the only available caretaker." *Id.* at 2. Third, the Government contends the Court may consider the dismissed attempted murder charge when ruling on whether Mr. Nuñez is dangerous, although "the lack of conviction should impact the weight the Court gives the charge . . .." *Id.* at 3.

## III.   LEGAL STANDARD

Over the course of the COVID-19 pandemic, the Court has addressed the legal standard for deciding a motion for compassionate release on several occasions. *See, e.g., United States v. Crosby*, 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)," and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A).[6]

The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions under § 3582(c)(1)(A).[7] This policy statement requires that the movant must

---

[6]     Section 1B1.13 of the United States Sentencing Commission Guidelines addresses reductions in the terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A). However, the Commission promulgated these provisions before Congress enacted the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 230-34 (2d Cir. 2020) (discussing the history of § 1B1.13 and the First Step Act). As Judge Hornby of this District noted, the "Second, Fourth, Sixth and Seventh Circuits have . . . ruled that the Guideline policy statement applies only to motions brought by the Director of the Bureau of Prisons, not to motions for relief brought by defendants, and nothing limits judges' discretion in considering 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Almeida*, Nos. 2:17-cr-52-DBH-01, 2:11-cr-127-DBH-01, 2021 U.S. Dist. LEXIS 364, at *4 (D. Me. Jan. 4, 2021) (quoting *Brooker*, 976 F.3d at 235-37 and citing *United States v. McCoy*, 981 F.3d 271, 281-83 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)); *see United States v. Gowdy*, No. 20-60800 Summary Calendar, 2020 U.S. App. LEXIS 40409, at *3 (5th Cir. Dec. 28, 2020) (describing whether § 1B1.13 applies to motions for compassionate release as an "open question"); *United States v. Pelloquin*, No. 20-12818-DD, 2020 U.S. App. LEXIS 39966, at *4 (11th Cir. Dec. 21, 2020) ("not frivolous").

[7]     As the Court has previously discussed, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act; its provisions are therefore not directly related to the unique circumstances presented by a global pandemic. Nevertheless, the Court finds the policy provisions are a useful starting point for its analysis of the compassionate release motion." *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1. Similarly, Judge Hornby of this district has ruled that this policy statement "'provides helpful guidance' but is 'not ultimately conclusive given the statutory change.'" *See United States v. Rembert*, No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *4 (D. Me. July 11, 2019), *aff'd*, No. 19-1785 (1st Cir. July 23, 2020)). The Court agrees.

meet the "requirements of subdivision (2)," which provides that a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sentencing Comm'n 2018) (U.S.S.G.). Section 3142(g) sets forth four factors that a court must consider before releasing a person pending trial. They include: (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The policy statement also provides criteria for determining whether "extraordinary and compelling reasons" exist to release the defendant. U.S.S.G. § 1B1.13 cmt. n.1. These reasons include certain enumerated terminal illnesses and similar conditions, physical, functional, mental, or cognitive impairments, age, family circumstances, and other unenumerated reasons. *Id.* § 1B1.13 cmt. n.1 (A-D). The policy statement further provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* § 1B1.13 cmt. n.2. Finally, it states that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* cmt. n.3.

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion to grant or deny a motion for sentence

16

reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, No. 18-cr-108-LM, 2020 U.S. Dist. LEXIS 83396, at *4 (D.N.H. May 12, 2020) (internal citations omitted)).

## IV.   DISCUSSION

### A.   Exhaustion

The Government contends Mr. Nuñez failed to exhaust his administrative remedies. *Gov't Opp'n* at 8. The crux of this argument is that his current motion cites his own health conditions as the grounds for release but his prior requests within the BOP were premised on the need to care for his ailing mother and teenage son. *Id.* at 9. Despite the Government's arguments, the Court is satisfied Mr. Nuñez exhausted his remedies within the BOP as to both his claim (1) that his caretaker status is an extraordinary and compelling reason for relief and (2) that his medical conditions are an extraordinary and compelling reason.

"[T]he compassionate release statute reserves to the warden . . . the initial duty to assess [Mr. Nuñez's] request for release . . .." *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *12 (D. Me. Feb. 3, 2021). Here, the warden's September 21, 2020 denial letter to Mr. Nuñez first considered and rejected his caretaker argument. *Gov't Opp'n,* Attach. 3, *Inmate Req. to Staff Resp.* at 1 (*Second BOP Denial*). Mr. Nuñez raised this argument in a September 1, 2020 written request to BOP staff, stating he was "requesting compassionate release so [he] can return home and take care of [his] family." *Gov't Opp'n*, Attach. 2, *Inmate*

*Req. to Staff.*  Mr. Nuñez had cited similar family-based concerns in a prior request for home confinement, which the BOP referenced in an August 14, 2020 denial of that request.  *First BOP Denial.*  Even though Mr. Nuñez had not raised his health as a basis for compassionate release, the BOP's September 21, 2020 denial considered whether his medical conditions warranted a reduction in sentence.  *Second BOP Denial.*  The BOP wrote: "Your case was reviewed and determined that although you have medical conditions, they are not debilitating."  *Id.*

The compassionate release statute permits a defendant to move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .."   18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A)'s plain language neither requires that the defendant's request within the BOP state specific grounds for release, nor that the motion before the Court raise precisely the same arguments as the inmate raised within the BOP.  The Government's reading of the exhaustion requirement would require inmates, typically acting pro se, to preserve arguments for subsequent litigation during the BOP's administrative process.  Moreover, as Mr. Nuñez's September 21, 2020 denial shows, the BOP's administrative criteria for granting compassionate release under BOP Program Statement 5050.50 limits the scope of meritorious arguments a prisoner may raise within the BOP.  *See Second BOP Denial* at 1-2 (discussing Program Statement 5050.50).  A district court's authority to grant compassionate

18

release is not so constrained.  *See supra* note 6.  In effect then, the Government's interpretation of the exhaustion requirement would compel an inmate such as Mr. Nuñez to knowingly raise arguments the BOP considers non-meritorious, just to secure the opportunity to bring them before a district judge where they may succeed.

Here, the BOP reviewed and rejected both grounds for release that Mr. Nuñez has presented to the Court.  The Court recognizes the Government cited several cases in support of its position that an inmate's compassionate release motion must rest on the same grounds as their request for compassionate release within the BOP.  *See Gov't's Opp'n* at 8 (citing *United States v. McNair*, Crim. No. 04-267 (FLW), 2020 U.S. Dist. LEXIS 154526, at *9 (D.N.J. Aug. 26, 2020); *United States v. Gordon*, No. 17-20067, 2020 U.S. Dist. LEXIS 144850, at *4 n.2 (E.D. Mich. Aug. 12, 2020).  Mr. Nuñez's case is distinguishable from those cases.  Even though Mr. Nunez did not argue to the BOP that his medical conditions entitle him to relief, the BOP expressly considered and rejected Mr. Nuñez's medical conditions when denying his prior request for compassionate release.  Therefore, the exhaustion requirement's objective of having the BOP first consider a defendant's case for relief has been satisfied.  Thus, the Court concludes Mr. Nuñez complied with the exhaustion requirement.

## B.   The Merits

### 1.   Extraordinary and Compelling Reasons

The Court is unpersuaded Mr. Nuñez is an appropriate candidate for compassionate release.  There is nothing about his current medical condition that places him at unusual risk if he were to contract the COVID-19 virus.  He is thirty-

seven years old and appears generally healthy.  *Def.'s Reply*, Attach. 1, *Gen Surg Consult Letter* at 1-2 (*Surgery Med. Records*).  An October 24, 2020 medical record confirms Mr. Nuñez's active medical problems consist of Dermatitis, Dermatophytosis, and a Sebaceous cyst.  *Id.* at 1.  He was not taking any prescription medications.  *Id.*  According to guidance from the Centers for Disease Control and Prevention (CDC), neither his age nor his underlying medical conditions increases his risk of serious complications from COVID-19.  *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Feb. 16, 2021) (explaining older adults are at higher risk); *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 16, 2021) (explaining those with certain medical conditions are at higher risk).  Lacking any potentially complicating medical conditions, the Court concludes that the risk COVID-19 poses Mr. Nuñez is not an extraordinary or compelling reason to release him.

Dr. Muir's opinion letter is consistent the Court's conclusion.[8]  The Court concludes Mr. Nuñez's objections to that letter are unavailing.  His objections that (1) the letter is an improper legal opinion and (2) embraces the ultimate issue lack merit.  Those objections rest upon the Federal Rules of Evidence; however, compassionate

---

[8]     The weight of the evidence other than Dr. Muir's letter independently supports the Court's conclusion that Mr. Nuñez's medical conditions do not entitle him to relief.  Dr. Muir's opinions are less probative because (1) he did not examine Mr. Nuñez and (2) he has not been subject to cross-examination.  Nevertheless, the Court views a medical records review by a physician as generally helpful to the Court's understanding of the patient's medical condition, and Dr. Muir's opinions about Mr. Nuñez are consistent with what is otherwise revealed by the medical records in this case.

release proceedings are not subject those rules. *See* FED. R. EVID. 1101(d)(3) (providing that the Federal Rules of Evidence are inapplicable to "miscellaneous proceedings such as: . . . sentencing; granting or revoking probation or supervised release; and considering whether to release on bail or otherwise"); *see also United States v. Cain*, No. 1:16-cr-00103-JAW, 2018 U.S. Dist. LEXIS 93407, at *12-15 (D. Me. June 1, 2018) (reaching a similar conclusion in the context of a hearing for revocation of supervised release). His third objection appears to be grounded in the Confrontation Clause of the United States Constitution. This lacks merit because the Confrontation Clause is a trial right and does not apply after an inmate is convicted or has pleaded guilty. *See United States v. Estes*, No. 19-2111, 2021 U.S. App. LEXIS 1017, at *6 (1st Cir. Jan. 14, 2021) (discussing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)); *Cain*, 2020 U.S. Dist. LEXIS 93407, at *16-17 (concluding the Confrontation Clause does not apply to proceedings other than criminal prosecutions); *United States v. Cameron*, No. 1:09-cr-00024-JAW; No. 1:13-cr-00001-JAW, 2014 U.S. Dist. LEXIS 148418, at *14 (D. Me. Oct. 17, 2014) ("The Confrontation Clause is inapplicable at sentencing"). Mr. Nuñez cited no authority to support his assertion that he has the right to confront and cross-examine Dr. Muir.

The Court is similarly unpersuaded by Mr. Nuñez's contention that his caretaker status for his mother and son is an extraordinary and compelling reason to release him. Mr. Nuñez is scheduled to be released from BOP custody on March 21, 2021. The Court sympathizes with Mr. Nuñez's concerns about his mother's well-being; however, it seems any hardship presented by Mr. Nuñez's

continued incarceration will be short-lived.  Mr. Nuñez's release is impending.  Once

he is released, he will be able to care for his mother.  Mr. Nuñez mentioned many of

the same concerns about his mother at the final hearing for his supervised release

revocation.  *Tr. 2/27 Hr'g* at 71:10-21.  Again, the Court is sympathetic, but

ultimately unpersuaded that the situation is so urgent as to merit releasing Mr.

Nuñez.[9]

Mr. Nuñez supplied a February 2, 2021 email from his brother Alfarabick

Mally, saying that their mother requires Mr. Nuñez's immediate assistance and that

Mr. Mally, his brother Kelvin, and their two sisters, Kimberly and Kaylen are unable

to fill Mr. Nuñez's role because of their work schedules.  *Mally Email* at 1.  Even

assuming that Mr. Nuñez's release today would make it easier on their mother, the

Court is not convinced that her need is so immediate that it justifies Mr. Nuñez's

immediate release.  The Court recognizes that the incarceration of one person affects

more than just a defendant.  The inmate's absence affects his immediate and

extended family, his friends and his community, and no doubt in Mr. Nuñez's case

affects his mother.  But as the Court explains, for reasons outside Mr. Nuñez's own

conduct, the Court did not impose any ongoing supervised release on Mr. Nuñez once

he completes his nine-month sentence.  As a consequence, the Court has resolved that

---

[9]     On February 10, 2021, Mr. Nuñez moved to file a medical record of a January 18, 2019 visit
his mother had with a nurse practitioner in Manhattan under seal.  *Def.'s Mot. to File Under Seal –
Mother's Medical Record* at 1 (ECF No. 1073).  The Court is not convinced that the mother's medical
record should be sealed and ordered the parties to address that question.  While this issue is being
resolved, the Court prepared an appendix to this opinion, which the Court has placed under seal for
the time being, discussing the impact of his mother's medical condition on Mr. Nuñez's motion for
compassionate release.  If the Court determines that the medical record should remain under seal, the
appendix will remain under seal.  If the Court determines that the medical record should be unsealed
or redacted, the Court will unseal or redact the appendix.

the nine-month sentence is the minimum appropriate term for Mr. Nuñez's conduct, if only to send a message to him to remain crime-free upon his release in March.

On balance, the Court concludes that Mr. Nuñez has failed to show extraordinary and compelling reasons merit his release. Due to his relative youth and lack of underlying medical conditions, the science suggests he is not at an increased risk of COVID-19. Additionally, the hardship that his incarceration has caused to his family is likely to abate after he is released from BOP custody in a little over a month's time. Without extraordinary and compelling reasons to release Mr. Nuñez, the Court need not consider the remaining compassionate release factors. It will, briefly, for the sake of completeness.

### 2.    Danger to the Community and Section 3553(a) Factors

The unusual circumstance underlying this motion for compassionate release is that Mr. Nuñez will be released from his nine-month term of incarceration on March 21, 2021, less than five weeks from the date of this order. To grant the motion for compassionate release, the Court would have to be convinced that Mr. Nuñez has demonstrated there are exceptional reasons that he should be released now as opposed to five weeks from now. The Court concludes that Mr. Nuñez has failed to meet his burden to do so, especially in view of the factors that motivated this Court's decision to impose a nine-month period of incarceration without any ongoing term of supervised release.

The Court hopes that Mr. Nuñez will not present a danger to his community upon release on March 21, 2021, but it is concerned he may. As the Court noted, Mr.

Nuñez was integral to a prolific crack cocaine distribution organization trafficking crack cocaine in Bangor, Maine in 2010-11 and he received a ninety-seven-month incarcerative sentence.  Once released on March 22, 2019, the question arose where Mr. Nuñez should serve his five-year term of supervised release.  Under PO protocol, he fell under the authority of the PO for the District of Maine; however, except for the period he was dealing drugs in Bangor, Mr. Nuñez has been a life-long resident of The Bronx.  To release him to Maine would place him in a state where he has no family or community ties and his only connections would be to the drug trafficking world.  The logical place for Mr. Nuñez to serve his term of supervised release was New York City.

But the New York PO was not required to accept a new supervisee from the Maine PO and was reluctant to do so, due to his track record.  The New York PO agreed to assume temporary supervision over Mr. Nuñez while he transitioned from a residential reentry facility and, if he did well there, it agreed to assume responsibility for his supervision for the remainder of his term of supervised release.

When Mr. Nuñez violated the terms of his supervised release, therefore, he scotched any realistic possibility that he could serve the remainder of his term of supervised release in New York and his violations had the effect of placing him in Maine for the remainder of his five-year term of supervised release.  Accordingly, despite its misgivings, the Court did not impose any term of supervised release on Mr. Nuñez so that he could return to The Bronx upon his release from incarceration.

Mr. Nuñez knew that misconduct at The Bronx Community Residential Reentry Center could lead to a rejection of his request for New York supervision and a return to the state of Maine for an extended term and that he had to control his behavior so that the New York PO would accept him as a supervisee. But he could not control himself. Within three months of his release from incarceration he tried to sneak alcohol into his room at The Bronx Community Residential Reentry Center, which is against its rules, and when his alcohol was confiscated, he made a "bumrush" to the control room, jammed the door against one of the employee's arm and injured her, cursed at the employees, and tried to take photographs of the involved employees. This last action was especially unnerving to one of the female employees who was aware that Mr. Nuñez had connections outside and was afraid he would transmit her photograph to his compatriots, and they would exact revenge against her on her way home. Despite overwhelming evidence during two extended evidentiary hearings that Mr. Nuñez did precisely what the PO alleged, Mr. Nuñez steadfastly maintained his innocence and denied any misconduct, placing the blame for his termination from the residential reentry facility on its employees.

In these circumstances, where the Court, through the idiosyncrasies of PO protocol, has released Mr. Nuñez from a five-year term of supervised release, the Court remains convinced that a nine-month term of incarceration is "sufficient but no greater than necessary" to achieve the purposes of the law.[10]  18 U.S.C. § 3553(a).

---

[10]     For these reasons, the uniqueness of the situation Mr. Nuñez presents, the Court has distinguished this case from the *Cremer* and *Cohen* cases that Mr. Nuñez cited. Mr. Nuñez cited *Cremer* for the state of COVID-19 in FCI Allenwood Low and the Court has instead relied on current

The Court hopes that Mr. Nuñez takes this order to heart and realizes that if he wants to be there for his mother, his son, his family, and his friends in The Bronx, his only course is to keep his fiery temper under control, to strictly obey the law, and to become a productive and constructive citizen.  The denial of his motion for compassionate release is a final reminder from this Court of the consequences of not doing so.  As the Court made clear at Mr. Nuñez's revocation hearing: "[W]hat Mr. Nunez has to learn is that when people of authority tell him to do something, he should just do it.  That's it."  *Tr. 2/27 Hr'g* at 54:17-19.

Particularly in a case such as this, where Mr. Nuñez alleges he is the only potential caretaker for an ailing parent, the Court believes it is worthwhile to forgo early release in order to send a clear reminder to Mr. Nuñez that continued criminal conduct affects not only him but also the people he loves and who rely on him.  In the Court's view, continuing Mr. Nuñez's incarceration in the short term may help deter him from ever returning to prison in the long term.  In turn, this will allow him to care for his ailing mother for so long as she requires his assistance.  Thus, the Court concludes Mr. Nuñez has not sustained his burden to demonstrate that the § 3553(a) factors weigh in favor of his early release.

## V.    CONCLUSION

---

statistics.  The *Cohen* case is markedly dissimilar, involving an international hedge fund entrepreneur who faced a three-month period of incarceration and was seeking a one-week reduction in sentence.

The Court DISMISSES Jowenky Nuñez's Motion for Compassionate Release and Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1047).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of February, 2021