UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11-cr-00205-JAW-06 |
| | ) | |
| JOWENKY NUÑEZ | ) | |

**ORDER ON MOTION TO FILE MEDICAL RECORDS UNDER SEAL**

In support of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), an inmate moves to file his mother's medical record under seal. The Court concludes that sealing the entire record is inconsistent with First Circuit precedent. The Court further concludes that redacting a portion of the medical record appropriately balances the inmate's mother's privacy interest and the public's common law right of access to judicial records. The Court has docketed a partially redacted version of the inmate's mother's medical records under seal after redacting (1) personal identifying information, and (2) information wholly irrelevant to the compassionate release motion. Consistent with the same criteria, the Court has also docketed a partially redacted version of the Court's sealed appendix to the order denying the inmate's motion for compassionate release. The Court intends to unseal these redacted documents after affording the parties an opportunity to object to the proposed redactions and resolving any such objections.

**I.     BACKGROUND**

On February 10, 2021, Jowenky Nuñez moved to file his mother's medical records under seal in support of his then-pending motion for compassionate release, citing no authority but claiming that the records contain "personal information."

*Def.'s Mot. to File Under Seal – Mother's Medical R.* at 1 (ECF No. 1073) (*Mot. to Seal*). On February 12, 2021, Mr. Nuñez filed his mother's three-page record of a visit with a nurse practitioner at Harlem Hospital Center on January 18, 2019. *Def.'s Mot. to File Under Seal – Mother's Medical R.* (ECF No. 1074) (*Med. R.*). On February 16, 2021, the Court issued (1) an order denying Mr. Nuñez's motion for compassionate release, (2) a separate sealed appendix to the order denying Mr. Nuñez's motion for compassionate release addressing the effect of Mr. Nuñez's mother's medical record on his motion, and (3) a separate order on Mr. Nuñez's motion to seal his mother's medical record, requiring the parties to brief the issue as to whether the mother's medical record should be sealed, redacted, or unsealed. *Order on Mot. for Compassionate Release* (ECF No. 1075) (*Compassionate Release Order*); *App. to Order on Mot. for Compassionate Release* (ECF No. 1077) (*Sealed App.*); *Order on Mot. to Seal* (ECF No. 1076).

On February 23, 2021, Mr. Nuñez responded to the Court's February 16, 2021 order by submitting further briefing on the sealing issue. *Br. in Supp. of Def.'s Mot. to File Under Seal – Mother's Medical R.* (ECF No. 1078) (*Def.'s Mem.*). Two days later, the Government replied. *Gov't's Resp. to Def.'s Br. in Supp. of Def.'s Mot. to File Under Seal* (ECF No. 1079) (*Gov't's Opp'n*).

## II.   THE PARTIES' POSITIONS

### A.   Jowenky Nuñez's Brief in Support of Sealing

Mr. Nuñez "contends that privacy interests held by [his] mother as to the entirety of her medical records provided to the court, if disclosed, overcomes any

2

presumption of public access." *Def.'s Mem.* at 1. Mr. Nuñez rests his argument on *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013). *Id.* at 1-3. He argues that, in *Kravetz*, "the First Circuit stated that there are certain records provided by parties to a court which either were used in that court's decisional calculus or could have been used in that court's decisional calculus, which are the type of records imbued with 'privacy interests implicated by disclosure [which] may overcome the presumption of public access.'" *Id.* at 1 (quoting *Kravetz*, 706 F.3d at 62) (alteration in original). Quoting at length from *Kravetz*, Mr. Nuñez believes that "records of . . . illnesses . . . and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* at 1-2 (quoting *Kravetz*, 706 F.3d at 62). He further contends that under *Kravetz*, "[m]edical information is, as intimated above, universally presumed to be private, not public." *Id.* at 2 (quoting *Kravetz*, 706 F.3d at 62) (internal quotation marks omitted).

Mr. Nuñez concludes by stating "there is the threshold question as to whether third-party medical records even constitute 'judicial records' subject to" *Kravetz*'s requirement that a court balance public and private interests when ruling on a motion to seal. *Id.* He cites *In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003) for the proposition that the decision to provide medical treatment to a prisoner is not judicial and therefore a prisoner's medical records are not judicial documents. He further urges that "[r]egardless, In Re [Boston] Herald also noted that in balancing respective interests, privacy interests of 'innocent third parties' deserve increased weight." *Id.* at 3 (citing *In re Boston Herald*, 321 F.3d at 191).

### B.     The Government's Opposition

The Government opposes continued sealing of Mr. Nuñez's mother's medical records and the Court's sealed appendix to its order denying Mr. Nuñez's motion for compassionate release. *Gov't's Opp'n* at 1. Rather than continue the seal, the Government proposes that Mr. Nuñez redact his mother's medical records to remove "(i) identification information; (ii) information irrelevant to the compassionate release motion; and (iii) information about the relevant medical conditions that is not already part of the public record and not relied on in the Court's order." *Id.*

After summarizing the procedural history, the Government turns to the merits. *Id.* at 1-2. First, the Government urges that Mr. Nuñez's mother's medical records are judicial records. *Id.* at 2. The Government notes that "[i]n *Kravetz*, the First Circuit explained that judicial records are those materials on which a court relies in determining the litigants' substantive rights." *Id.* (quoting *Kravetz*, 706 F.3d at 54) (internal quotation marks omitted). Again relying on *Kravetz*, the Government argues "that this definition should be read broadly to include not only documents expressly relied on by the court but to 'relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings . . . .'" *Id.* (quoting *Kravetz*, 706 F.3d at 58). Given this standard, the Government concludes Mr. Nuñez's mother's medical records are "documents to which the presumption of public access applies" because the Court "expressly considered and relied on the medical records" in denying Mr. Nuñez's motion for compassionate release. *Id.* at 3.

4

Next, the Government puts forth that "unsealing the medical records with appropriate redactions will protect [Mr. Nuñez's] mother's privacy interests while providing the public access to records relevant to the Court's decision." *Id.* The Government notes that this case is somewhat distinguishable from *Kravetz*, writing that "unlike the defendant in *Kravetz*, [Mr. Nuñez] submitted medical records of his mother—a third party to the litigation." *Id.* As third-party medical records, the Government instructs that "the Court should 'consider the degree to which the subject matter is traditionally considered private rather than public' and weigh '[t]he nature and degree of injury' to the third party if the information is made public." *Id.* (citing *Kravetz*, 706 F.3d at 62) (alteration in original).

The Government contends medical records are presumptively private. *Id.* at 4. As such, it suggests redacting medical records may be appropriate when the records are "third-party medical records that are tangential to the issue being adjudicated." *Id.* In such instances, the Government reasons that redacting peripheral information from medical records, while leaving the relied-upon portion of the medical record unredacted, is the best way to balance a third party's interest in privacy with the right of public access to judicial records. *Id.*

Here, the Government believes "redaction can mitigate any potential harm public disclosure may cause third parties like [Mr. Nuñez's] mother." *Id.* However, it believes such harm "is already done" because Mr. Nuñez "has already made his mother's stroke and blindness part of the public record." *Id.* Even so, the

5

Government acknowledges "there could be additional harm to her privacy interest by further—and more detailed—publication of her medical information." *Id.* at 4-5.

Turning to the public's interest in accessing the medical records, the Government suggests that interest is "tempered" for two reasons. *Id.* at 5. First, although "[t]he Court considered the medical records in its analysis" the Government avers they were not "a necessary basis of the Court's decision." *Id.* Rather, "the Court found that [Mr. Nuñez] failed to demonstrate that the § 3553(a) factors weigh in favor of his early release." *Id.* The Government notes "[t]his independent basis for denying [Mr. Nuñez's] motion did not require any analysis of the medical records." *Id.* Second, the Government highlights that "the medical records were not the sole basis for rejecting the . . . caretaker argument." *Id.* Instead, the Court's unsealed opinion "considered a letter from [Mr. Nuñez's] brother that showed [Mr. Nuñez] had other siblings that could take care of his mother and that 'the hardship that his incarceration has caused to his family is likely to abate after he is released from BOP custody in little over a month's time.'" *Id.* (quoting *Compassionate Release Order* at 21-23).

The Government concludes "unsealing the medical records with appropriate redaction is appropriate here." *Id.* at 6. It suggests "redaction of identification information and information irrelevant to the compassionate release motion is appropriate" as is "redaction of specific information about the relevant medical conditions that is not already part of the public record and not relied on in the Court's order . . .." *Id.*

6

**III.     DISCUSSION**

"There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Craig v. Harney*, 331 U.S. 367, 374 (1947). "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, the public's right to access judicial records is "not unfettered." *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013). In certain circumstances, "the most compelling reasons" may require a Court to prioritize an individual's privacy interests above the public right of access or, alternatively, strike a balance between the two. *Id.*

At issue is how the Court should balance the public's presumptive right to access judicial records against a third party's privacy interests in her medical records that her son filed in Court to support his motion for release from prison. Mr. Nuñez argues no portion of his mother's medical records should be publicly accessible. The Government disagrees and urges that only the portions of Mr. Nuñez's mother's records relevant to his release argument should be unsealed but that the remaining portions of the record, unrelated to his release argument, should remain private and sealed.

Ultimately, the Court concludes that the Government's argument is more persuasive and strikes what it views as the proper balance between public access and respecting third-party privacy interests. The Court has redacted the portions of the

7

medical records and sealed appendix containing personally identifying information and wholly relevant information. The Court will give the parties the opportunity to object to these redactions and, after resolving any objections, the Court intends to unseal the redacted versions of the medical record and sealed appendix.

A.    **Legal Standard: Sealing Judicial Records**

In the First Circuit, the leading case on sealing is *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013). *Kravetz* explains that "the common law right of access applies to documents that constitute 'judicial records,' which are defined as 'materials on which a court relies in determining the litigants' substantive rights.'" *McKenzie v. Brannan*, No. 2:20-cv-00262-JAW, 2020 U.S. Dist. LEXIS 211557, at *10 (D. Me. Nov. 12, 2020) (quoting *Kravetz*, 706 F.3d at 54). Put slightly differently, "once a party submits information to a court and urges consideration of the information for purposes of making a judicial ruling, the public right of access presumptively applies to that information . . .." *Cole v. Maine Office of Info. Tech.*, No. 1:17-cv-00071-JAW, 2018 U.S. Dist. LEXIS 676, at *4-5 (D. Me. Jan. 3, 2018) (citing *Kravetz*, 706 F.3d at 54).

"Though the public's right of access is vibrant, it is not unfettered." *Kravetz*, 706 F.3d at 59 (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). *Kravetz* sets forth a framework for determining whether judicial records should be sealed:

> When addressing a request to unseal, a court must carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case, keeping in mind that "'only the most

> compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access."

*Id.* (quoting *In re Providence Journal Co., Inc.*, 293 F.3d 1, 10 (1st Cir. 2002) (quoting *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987))). When sealing judicial records, a district court must explain why a seal is proper and the district court's "reasons must be specific enough to permit a reviewing court to determine whether sealing was appropriate." *Kravetz*, 706 F.3d at 60 (citing *Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984)).

"[P]rivacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." *Standard Fin. Mgmt.*, 830 F.3d at 411 (quotation marks omitted). "Third-party privacy interests, in particular, have been referred to as 'a venerable common law exception to the presumption of access, and weigh heavily in a court's balancing equation.'" *Kravetz*, 706 F.3d at 62 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (*Amodeo II*)) (internal citations and quotation marks omitted). When determining whether a judicial record contains private information that may justify a seal, the First Circuit instructs "that courts should 'consider the degree to which the subject matter is traditionally considered private rather than public.'" *Id.* (quoting *In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003)). Thus, "'[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1051).

9

Another factor that a court should consider when ruling on a motion to seal is the "nature and degree of injury" that will arise from revealing private information about third parties. *Id.* (quoting *Amodeo II*, 71 F.3d at 1051). That requires a court to assess "not only the sensitivity of the information and the subject but also . . . how the person seeking access intends to use the information." *Id.* (quoting *Amodeo II*, 71 F.3d at 1051). The information's reliability is also relevant. *Id.* "Raw, unverified information should not be as readily disclosed as matters that are verified" and "a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.* (quoting *Amodeo II*, 71 F.3d at 1051).

Ruling on a motion to seal does not require a district court to make a binary choice between a blanket seal or providing unfettered public access to sensitive information. There is a comfortable middle ground. "[W]here the public's right of access competes with privacy rights, 'it is proper for the district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document.'" *Id.* at 62 (quoting *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995) (*Amodeo I*)).

### B. Application

#### 1. The Medical Record Is a Judicial Record Subject to a Presumptive Right of Public Access.

At the outset, the Court readily concludes Mr. Nuñez's mother's medical records are judicial records. Mr. Nuñez based his motion for compassionate release on his need to serve as a caregiver for "his ailing mother." *Jowenky Nunez's Reply to*

10

*Gov't's Obj. to Def.'s Mot for Compassionate Release and Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* at 1-2 (ECF No. 1065) (*Def.'s Compassionate Release Reply*).  He filed the medical record to corroborate his claim that his mother was in poor health and to convince the Court to release him.  *Mot. to Seal*; *Med. R.*

As a document filed in support of Mr. Nuñez's motion for release from federal custody, the medical record is unquestionably a judicial record.  *See Kravetz*, 706 F.3d at 57-58 (concluding "[t]he presumptive right of access plainly attaches" to letters from third parties proffered to a district court at sentencing in support of a defendant's argument for leniency).  Mr. Nuñez argues otherwise, *see Def.'s Mem.* at 2-3, but he is mistaken.  He cites *In re Boston Herald*, 321 F.3d at 190 for the premise that medical records are not judicial records; however, his argument takes the cited passage out of context.  *Def.'s Mem.* at 2-3.  The language Mr. Nuñez references stands only for the proposition that a jail's administrative records about a prisoner's medical care are not automatically judicial records just because the decision to provide or withhold prison medical care may implicate the prisoner's constitutional rights.  *See In re Boston Herald*, 321 F.3d at 190 (distinguishing between judicial records and administrative records).  *Kravetz* makes clear that a document's subject does not determine whether the document is a judicial record.  706 F.3d at 54.  The dispositive question is instead whether a party submitted the document to a court for consideration when ruling on a party's substantive rights.  *See id.* ("[Judicial records] are those 'materials on which a court relies in determining

11

the litigants' substantive rights'") (quoting *In re Providence Journal*, 293 F.3d at 9-10).

Nor to fit under the definition of "judicial record" is it necessary to prove that a court actually relied on the record in making its decision. *Id.* at 58. In *Kravetz*, the First Circuit made it clear that the test is whether a party "meant to effect the judge's sentencing determination." *Id.* If so, the documents "take on the trappings of a judicial document under the common law." *Id.* (quoting *United States v. Gotti*, 322 F. Supp. 2d 230, 249 (E.D.N.Y. 2004)). Here, the Court can conceive of no reason Mr. Nuñez would have filed his mother's medical record if not to influence this Court's decision on his motion for compassionate release. Under this view, Mr. Nuñez's mother's medical record falls well within the definition of judicial record.

As a judicial record, *Kravetz* establishes that the public possesses a presumptive right of access to the medical record Mr. Nuñez filed, as well as the Court's sealed appendix analyzing those records. *Id.* However, the medical record contains potentially sensitive health information about a third party to Mr. Nuñez's case. *Med. R.* at 3-5. Thus, on its face, the medical record implicates some of the privacy interests the *Kravetz* Court identified as potentially justifying sealing. *See Kravetz*, 706 F.3d at 62 (discussing how a court may protect privacy interests of third-party information and medical information by sealing or redaction).

      **2.    Under *Kravetz*, Partial Redaction Best Balances the Public and Private Interests at Stake.**

Mr. Nuñez's request for a seal is ultimately unpersuasive. Under *Kravetz*, a blanket seal would insufficiently balance his mother's privacy interests with the

12

public's presumptive right to access judicial records. "Courts have long recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" *Kravetz*, 706 F.3d at 52 (quoting *In re Providence Journal*, 293 F.3d at 9). Several weeks ago, the Court dismissed Mr. Nuñez's motion to be released from incarceration to care for his allegedly ailing mother, just one month before his sentence would end. *Compassionate Release Order* at 27. The public has a right to know why.

If denied the opportunity to review the medical record and the sealed appendix interpreting that record, some members of the public may question whether the Court correctly found Mr. Nuñez's mother's conditions were not serious enough to merit his early release. Transparency, by contrast, strengthens the public's faith that the federal judiciary impartially applies the law to the credible evidence before it. This public interest endures even though the Court denied Mr. Nuñez's compassionate release motion on multiple grounds and identified other record evidence refuting his caretaker argument. Despite these other bases for denying Mr. Nuñez's motion, the medical record is likely the most reliable and probative piece of evidence describing Mr. Nuñez's mother's conditions. As such, denying public access to the record and the Court's sealed appendix interpreting the record considerably impairs public monitoring of the courts.

In the Court's view, redacting the medical record is the better way to proceed. On this point, the First Circuit's analysis in *Kravetz* is instructive. The *Kravetz* Court considered whether a district judge properly declined to unseal various documents

filed with the court in connection with the defendant's sentencing. *Kravetz*, 706 F.3d at 51-52. Several judicial records were in dispute, including letters to the court requesting a lenient sentence. *Id.* at 62. Some of these letters from third parties "contain[ed] discussion of the ill health of members of the authors' families, incidents of domestic violence, and other domestic relations matters." *Id.* The First Circuit recognized this information was "highly personal" and "appear[ed] to have no direct bearing upon the public's assessment of the sentences imposed." *Id.* Accordingly, the First Circuit concluded "the privacy interests implicated by disclosure may overcome the presumption of public access" but reserved to the district court the ultimate decision as to whether those interests would be best protected through either a seal or redaction. *Id.*

The *Kravetz* Court also considered the defendants' privacy interest in information concerning their own physical and mental health. *Id.* at 63. Although the Court recognized "[m]edical information is . . . universally presumed to be private, not public" it clarified that "[t]he privacy interest in medical information is neither fundamental nor absolute and can be waived or otherwise overcome by a variety of means." *Id.* (internal citations and quotation marks omitted). For example, an alleged privacy interest in medical information "may lose some force" when the information has already been publicly disclosed. *Id.* (citing *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975)). Thus, a *Kravetz* defendant's argument for sealing was less persuasive because at his sentencing "he articulated not only the full panoply of

14

ailments from which he suffers, but also the dire predictions for his health should he fail to take immediate steps to improve his condition." *Id.* at 63-64.

The Court views Mr. Nuñez's mother's medical record as raising largely the same issue as the third-party sentencing letters. Much like the sentencing letters, Mr. Nuñez's mother's medical record contains some sensitive and typically private information about a third party. Here though, there is a legally significant difference. Unlike the sentencing letters, most of the third-party medical information is central to resolving Mr. Nuñez's argument that his mother's poor health justified his release from prison. Thus, although the medical information is presumptively private, it was not peripheral to the disposition Mr. Nuñez's motion for compassionate release. Therefore, the public right of access weighs in favor redacting any peripheral or irrelevant information within the record, rather than an outright seal.

The *Kravetz* defendant's medical information provides another useful point of comparison. Mr. Nuñez's medical records are similar to the *Kravetz* defendant's medical information because they both contain presumptively private medical information. Another similarity is that Mr. Nuñez had already disclosed a substantial portion of the sensitive information in public settings. As the *Kravetz* Court noted, prior public disclosure of private information may abrogate or diminish the presumption of privacy. *Id.* at 63 ("Levitin's claim of privacy in his medical records, however, may lose some force in light of his prior publication of the information that he now seeks to protect"). In these instances, prior public disclosure weighs against sealing certain otherwise sensitive judicial records.

15

Here, the public docket entries contain considerable information about Mr. Nuñez's mother's health. In fact, Mr. Nuñez spoke about his mother's health in open court at the final hearing for revocation of his supervised release *Tr. of Proceedings – Continued Final Revocation Hr'g* at 69:20-71:20 (ECF No. 1011) (*Revocation Tr.*). He mentioned her stroke, claimed she was blind,[1] said that he cooks for her, and stated he helps her with using the bathroom. *Id.* Mr. Nuñez cited these statements in support of his motion for compassionate release. *Suppl. to Jowenky Nunez's Reply to Gov't's Obj. to Def.'s Mot. for Compassionate Release and Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* at 2 (ECF No. 1069) (*Def.'s Compassionate Release Suppl. Reply*). In support of his motion for compassionate release, Mr. Nuñez also filed an email from his brother discussing their mother's medical conditions. *Id.*, Attach. 1, *Email from Alfarabick Mally* (*Mally Email*). In that email, Mr. Nuñez's brother mentioned their mother's stroke and stated she needs assistance eating, bathing, going to the bathroom, and putting on clothes. *Id.* He also described a recent fall she had experienced. *Id.*

In sum, the medical record largely repeats publicly accessible information on the docket. Therefore, the nature and scope of the harm to Mr. Nuñez's mother does not support a seal. The Court also finds it unlikely that disclosing Mr. Nuñez's mother's medical record would further harm her privacy interests. In the Court's

---

[1] The Court discussed whether Mr. Nuñez's mother is actually blind in the sealed appendix. Without revealing what the medical record and sealed appendix show about his mother's blindness, the Court points out to Mr. Nuñez that this particular issue exemplifies the problems that may result from sealing docket entries. Here, the sealed evidence was the most reliable evidence—a medical record directly from a healthcare provider—that the Court used to determine whether Mr. Nuñez's mother was blind.

16

view, she has no conditions that carry particular stigma. As such, disclosure of the medical record does not raise the *Kravetz* Court's concerns about revealing information that "gratif[ies] private spite or promote[s] public scandal," nor would "public access simply cater to a morbid craving for that which is sensational and impure." *See Kravetz*, 706 F.3d at 63 (quoting *Nixon*, 435 U.S. at 598 and *Amodeo II*, 71 F.3d at 1051).

Pursuant to *Kravetz* and the Court's interest-balancing analysis, the Court concludes it is appropriate to redact (1) personal identifying information as set forth in Federal Rule of Criminal Procedure 49.1 and (2) information wholly irrelevant to the compassionate release motion from the medical record and sealed appendix interpreting the record. Mr. Nuñez put his mother's health in dispute when he moved for compassionate release to care for her. Her medical record is a key piece of evidence underlying Mr. Nuñez's claim for release. The sealed appendix analyzes and quotes at length from the medical record which, as discussed, predominantly contains information that is either (1) already public or (2) unlikely to injure Ms. Nuñez if made public. Thus, there is reason to redact some information in the medical record itself, and the reasoning applies to the contents of the appendix, which largely repeats the contents of the medical record. Contemporaneously with this order, the Court has docketed redacted versions of both documents under seal. The Court intends to unseal the redacted versions after providing both parties with the opportunity to challenge it.

## IV. CONCLUSION

The Court GRANTS in part and DENIES in part Jowenky Nuñez's Motion to File Under Seal – Mother's Medical Record (ECF No. 1073). The Court ORDERS Mr. Nuñez to file any objections to the Court's proposed redacted versions of his Mother's Medical Record (ECF No. 1074) and the Appendix to Order on Motion for Compassionate Release (ECF No. 1077) within seven days. The Court further ORDERS the Government to file its response, if any, within seven days of any objection by Mr. Nuñez.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2021.